IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TITUS KELLAM,** : | |
|     **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 24-CV-6608** |
| : | |
| **CORRECTIONAL OFFICER** : | |
| **HOOVER,** *et al.*, : | |
|     **Defendants.** : | |

<u>**MEMORANDUM**</u>

**PADOVA, J.**                                                                                                                         **APRIL 2, 2025**

      Plaintiff Titus Kellam is a pretrial detainee in custody at the Curran-Fromhold Correctional Facility ("CFCF"). In his *pro se* Complaint, he asserts both constitutional claims pursuant to 42 U.S.C. § 1983 and state law claims against CFCF's Medical Department, CFCF's Mental Health Department, and two CFCF correctional officers in their official and individual capacities. (ECF No. 3.) Kellam also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Kellam leave to proceed *in forma pauperis* and conduct statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B). Upon screening, the Court determines that some claims are plausible and can be served, but other claims must be dismissed. Kellam will be granted the option of either proceeding only on the claims that are plausibly pled or filing an amended complaint to attempt to cure the defects in the other claims that are dismissed without prejudice.

1

I.   **FACTUAL ALLEGATIONS**[1]

The Complaint alleges that Kellam, while at CFCF, was given medication for high blood pressure, which caused him to have "very intense nightmares." (Compl. at 12.) He also suffers from post-traumatic stress disorder ("PTSD"), for which he took "medication . . . while at home." (*Id*.) He "informed the medical staff and mental health staff" of his condition (*id*.), and "made more than two attempts to get a medical bottom bunk pass due to suffering from PTSD and being on a medication that causes strong nightmares." (*Id*. at 5.) The Medical Department at CFCF told Kellam that he had to go through the Mental Health Department to get the bottom bunk pass, and Mental Health told him to go to Medical. (*Id*. at 7, 12.) On June 12, 15, 18, 22, and July 17, 2024, he filed grievances seeking to obtain the bottom bunk pass. (*Id*. at 12.) He also spoke "verbally face-to-face during meetings with mental health and medical providers" and each time he requested the bottom bunk pass, the Departments "blamed each other." (*Id*.) Ultimately, he was taken off his medication, but his "nightmares and sleep walking/sleep talking continued." (*Id*.)

On August 8, 2024, at approximately 4:15 a.m., Kellam "jumped out of [his] sleep from a bad intense nightmare, falling from the top bunk bed." (*Id.*) His cellmate helped him sit "upright after laying in [his] own blood for about thirty to sixty seconds." (*Id.*) He had fallen on his face and "blood was coming from [his] mouth" and he had a gash on his check under his

---

[1] Kellam used the form complaint available to unrepresented litigations to file his claims and attached an exhibit titled "Statement of Claims," which consists of four handwritten pages. (ECF No. 3.) The Court considers the entirety of the submission to constitute his Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

right eye. (*Id*.) He stood up, but felt "dizzy and lightheaded and threw up." (*Id*.) He alleges that he "managed to get the . . attention" of Defendant Officer Pedler to tell him that he had "a medical emergency, while covering [his] mouth and cheek with [a] bloody towel," but Officer Pedler said that he was "not worried about medical right now, only courts, and then walked away from [Kellam's] cell." (*Id*.) Kellam "then pressed the distress button that's located in the cells to get the attention of Officer Hoover, who was supposed to be on the unit doing rounds to check on inmates." (*Id*.) Defendant Hoover, however, was not in the unit at that time. (*Id*.) Around 6:45 a.m., "Officer Hoover came into the unit and muted [Kellam's] distress call on the guard's front post." (*Id*.) Kellam began yelling as loud as he could to get Defendant Hoover's attention, "C/O Cell 12, Kellam, I have a medical emergency I'm bleeding from my face and mouth, I fell off the top bunk while sleeping." (*Id*. at 12-13.) Hoover "still didn't come to [his] cell to check [his] emergency and began to walk off the unit, flagging the air" and saying, "Yeah, yeah, I got you." (*Id*. at 13.) Kellam was ignored by Defendants Pedler and Hoover from 4:15 a.m. to 6:55 a.m. (*Id*.)

At 7:05 a.m., the morning officer came into the unit for her shift, so Kellam pressed the distress button again and began yelling, "Cell 12, medical emergency, please help." (*Id*.) The morning officer responded right away and called Sergeant Matthews, who came minutes later. (*Id*.) Sergeant Matthews took Kellam's statement and pictures of his injuries. (*Id*.) Kellam was taken to the Medical Department around 8:00 a.m., and the medical staff cleaned his face wounds and gave him a neck brace. (*Id*.) About an hour later, he was taken to the hospital. (*Id*.) He was given a CAT scan and x-rays were taken, which revealed he fractured his middle finger on his right hand and the bone that is located under his eye. (*Id*.) In addition, his right shoulder and back were bruised, and he suffered a mild concussion and subconjunctival hemorrhage in his

right eye. (*Id*.)

Kellam filed a grievance related to Defendants Hoover and Pedler ignoring his request for medical attention after his fall and received a response that his issues would be addressed, but "that's it." (*Id*. at 7.) He "never got to the next steps of his grievance" and was told it could take months before his issues would be addressed. (*Id*.)

Kellam asserts claims for "negligence of job duties, intentional indifference of mental distress, negligence of serious medical need, and poor treatment of medical emergency." (*Id*. at 3.) He also takes issue with the grievance process. (*Id*. at 3, 7.) He has a chipped tooth and continues to experience blurry vision in his right eye, and pain in his right wrist, joints, back and neck pain from the fall. (*Id*. at 5, 13.) He still has to "climb up and down to get on the top bunk bed." (*Id*. at 13.) He requests money damages and unspecified injunctive relief for inadequate medical care. (*Id.* at 5, 14.)

## II.   STANDARD OF REVIEW

The Court grants Kellam leave to proceed *in forma pauperis*.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true,

---

[2] Because Kellam is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quotation omitted), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Kellam is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.   DISCUSSION**

Kellam brings constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

**A.   Official Capacity Claims for Money Damages**

Kellam asserts claims against Defendants Hoover and Pedler, each of whom appear to be employees of the City of Philadelphia at CFCF as correctional officers.  Claims against City officials named in their official capacity are indistinguishable from claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally

represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citation omitted).

      To state an official capacity/municipal liability claim, a plaintiff must allege that the municipality's policies or customs caused the alleged constitutional violation. *See Monell,* 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citations omitted).

Kellam fails to allege that he was injured due to a policy or custom of the City. Indeed, he fails to make any policy allegations at all. For this reason, all official capacity claims for money damages must be dismissed. Because the Court ultimately concludes that any underlying claims are not plausible, this dismissal will be with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile").

B. **Deliberate Indifference Claim – Denial of Bottom Bunk Assignment**

While Kellam has alleged a plausible deliberate indifference claim against Defendants Hoover and Pedler based on his allegation that they denied him medical care on August 8, 2024, his claim based on the failure to provide him with a bottom bunk assignment cannot proceed as pled. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[3] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as

---

[3] As it appears that Kellam was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*) (citations omitted); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citation omitted). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Kellam alleges that he has a serious medical need requiring him to use the bottom bunk because his high blood pressure medication and PTSD causes severe nightmares. (*See* Compl. at 5, 12.) Although he made CFCF's Medical Department and Mental Health Department aware of his medical conditions and requested a bottom bunk pass for those needs, he was left with a top bunk assignment. "'Courts have found that it can be [a constitutional] violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need.'" *Saunders v. GEO Grp., Inc.*, Civ. A. No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, Civ. A. No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016)) (citations omitted); *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (reversing grant of summary judgment in favor of prison doctor where a reasonable factfinder could conclude that the doctor recklessly disregarded prisoner's medical need for a lower-bunk assignment or the prisoner was denied a lower-bunk assignment without consideration of medical criteria); *see also Guilfoil v. Pierce*, Civ. A. No. 06-493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with

a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious." (citations omitted)).

Kellam names CFCF's Medical Department and Mental Health Department as Defendants for the failure to provide him with the bottom bunk bed pass that he requested several times. These are not proper defendants for this claim. The United States Court of Appeals for the Third Circuit has made clear that a prison medical department is not a "person" for purposes of § 1983 liability. *Ruff v. Health Care Adm'r*, 441 F. App'x 843, 845-46 (3d Cir. 2011) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (*per curiam*)). Therefore, neither the CFCF Medical Department nor the CFCF Mental Health Department is a proper defendant in this case under § 1983. These claims will be dismissed as implausible.

The remaining defendants are Correctional Officers Hoover and Pedler. Kellam does not allege that he discussed his medical conditions with either Hoover or Pedler, and he does not allege any other facts suggesting that they had reason to know of his medical condition prior to his fall. Therefore, Kellam has failed to name a defendant who was aware of his serious medical need requiring him to use the bottom bunk but was deliberately indifferent to that need.[4] Accordingly, this claim is not plausible as pled but Kellam will be permitted the option of filing an amended complaint to cure this defect.

---

[4] At one point, Kellam suggests that he is suing Defendants for "failure to update safety conditions of the beds." (Compl. at 14.) However, he does not allege any facts concerning the safety conditions of the beds and thus, the Court can discern no claim arising from them. If Kellam wishes to proceed on any such claim, he may attempt to do so in any amended complaint that he files. Kellam also requests unspecified injunctive relief for "inadequate medical care." (*Id*.) Should Kellam file an amended complaint and desire the Court to consider a claim for this as-yet-undefined injunctive relief involving medical care, he must clarify the nature of the injunctive relief he seeks and specify a defendant who can provide that relief.

9

### C. Claims Based on Grievances

Finally, to the extent Kellam is attempting to assert stand-alone claims against CFCF staff members based on allegations that the grievance process failed to address his issues, those claims will be dismissed because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001), and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations like Kellam's that are predicated on failures of the grievance process or improper handling of, or response to, grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) (agreeing with district court "that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances" (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (quotation and citation omitted)).

Moreover, a prison official's involvement in the grievance process is not sufficient to allege liability under § 1983 for the events that gave rise to the grievance. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]." (citation omitted)); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of the[] defendants

10

were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). All claims based on the handling of grievances will be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Kellam leave to proceed *in forma pauperis* and dismiss with prejudice any official capacity claims, claims based on grievances, and claims against the CFCF Medical Department and CFCF Mental Health Department. As for Kellam's deliberate indifference claim for not receiving a bottom bunk assignment, the Court will dismiss that claim without prejudice. His request for injunctive relief will also be denied because he has not named a defendant who can provide that relief. The Court is prepared to direct service of the Complaint on Defendants Hoover and Pedler, so that Kellam can proceed on his claims against them for alleged deliberate indifference to his medical needs in connection with his fall on August 8, 2024, and any related state law claims. However, the Court will first give Kellam an opportunity to file an amended complaint in the event he seeks to amend his dismissed deliberate indifference claim. If he opts not to file an amended complaint, the Court will direct service only on Defendants Hoover and Pedler.

An appropriate Order, which provides further information about options for proceeding in this case, follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

JOHN R. PADOVA, J.